IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| GOJUMP AMERICA, LLC, a Nevada limited liability company; and GOJUMP HAWAII, LLC, a Hawaiʻi limited liability company,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>SKYDIVING SCHOOL, INC., a Hawaiʻi corporation; HINSHAW IT, LLC, a Hawaiʻi limited liability company; FRANK M. HINSHAW, an individual; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | CIV. NO. 25-00146 SASP-WRP<br><br>ORDER (1) DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, FILED AUGUST 22, 2025; AND (2) GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, FILED APRIL 4, 2025 |

ORDER (1) DENYING DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES, FILED AUGUST 22, 2025; AND (2) GRANTING
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, FILED APRIL 4, 2025

　　　　This action represents apparent lingering tension between parties engaged in the business of skydiving in Hawaiʻi. In 2023, Defendants sued Plaintiffs for violation of trademark infringement and unfair competition laws. That suit ended in defeat for Defendants, but along the way, they acquired a domain name consisting of a word that has been representative of Plaintiffs' business for about a decade. Now, Plaintiffs bring suit and, in doing so, seek injunctive relief against Defendants.

　　　　In attempts to end this legal action, Defendants insist that Plaintiffs' claims have no facial plausibility. Meanwhile, Plaintiffs assert they are entitled to a preliminary injunction to prevent irreparable injury to their trademark interests. Upon review of the record before it,

together with the relevant legal authorities, the Court CONCLUDES that this litigation must

advance, but not without awarding Plaintiffs the preliminary relief they seek and to which they

are entitled.

## I.        RELEVANT BACKGROUND[1]

By way of introduction, the plaintiffs in this case are GoJump America, LLC, and

GoJump Hawaii, LLC (collectively "GoJump" or "GoJump companies"[2]); and the defendants are

Skydiving School, Inc. ("SSI"), Hinshaw IT, LLC ("Hinshaw IT"), and Frank M. Hinshaw

("Mr. Hinshaw" and collectively "Defendants"). Mr. Hinshaw, who is a resident of Honolulu,

owns and controls SSI and Hinshaw IT. [Compl., ECF No. 1 ¶ 12.] The underlying allegations

are as follows.

GoJump was founded in 2015 "to provide safe skydiving experiences to thrill

seekers living in and visiting premium destinations in the United States, including San Diego,

Los Angeles, Las Vegas and Hawaii." [Compl. ¶ 18.] It advertises its skydiving services on

multiple Internet websites and social media platforms, all of which contain the name and/or word

"GOJUMP"[3]. [Id. ¶¶ 20–21.] On its social media platforms, GoJump has gained "a following of

tens of thousands across the country." [Id. ¶ 21.] It "has also earned considerable unsolicited

media coverage and thousands of positive reviews on popular business review sites" like Yelp®

---

[1] This section provides a summary drawn from the Complaint and its attachments. It is not intended to be a comprehensive description of all the facts, but rather, a broad overview of the relevant background information. Other facts pertinent to this Court's decision are summarized below to the extent they are applicable.

[2] When the word "GoJump" is used to refer to the plaintiffs, the pronoun is singular; when the phrase "GoJump companies" is used similarly, the pronoun is plural.

[3] Unless referred to in a quote taken directly from the pleadings, "GOJUMP" is capitalized to distinguish references to the word or mark as opposed to the plaintiffs in this case.

and TripAdvisor®. [*Id.* ¶ 22.] Further, since 2015, GoJump has sold promotional merchandise bearing the word "GOJUMP" and the companies' various logos. [*Id.* ¶ 23.]

On September 3, 2019, GoJump applied for and received a '458 federal service mark registration for "[r]ecreational services in the nature of professional tandem sky diving; tandem sky diving from planes and helicopters; [and] professional sky diving instruction services." [Exh. A, ECF No. 1-3; Compl. ¶ 19.] The registered "mark consists of a circle having a top half representing the sky and a bottom half representing the horizon where the ground meets the sky and a white wing shape extending from the bottom half of the circle towards the horizon all located within the circle, the circle positioned above the words 'GOJUMP'." [Exh. A. See below for an image of the registered mark.]



The "GOJUMP" formative mark and its related family of marks (i.e., "GoJump America" and "GoJump Hawaii") serve to identify and distinguish the source of GoJump's products and services to the public. [Compl. ¶ 25.] Sales and advertising expenditures under the "GOJUMP" brand have been extensive over the last decade. [*Id.*] Given their mark's wide recognition among consumers, the GoJump companies "have developed exclusive and valuable goodwill and strong federal, statutory, and common law rights in the 'GoJump' mark . . . before they had ever crossed paths with Defendants." [*Id.*]

A.    **2023 Litigation**

By 2023, GoJump's business was thriving, expanding into three states, employing close to sixty full-time independent contractors, and spending enormous sums of money on marketing and advertisements. [Compl. ¶ 24.] After GoJump opened a new location at the same

3

drop zone utilized by SSI in Hawaiʻi, in July 2023, SSI brought a trademark infringement and unfair competition action against the GoJump companies and their founder. [*Id.* ¶¶ 26–27.] A district court in this jurisdiction dismissed the action, holding that one party should not be able to monopolize the expression "skydiving in Hawaii" and that federal trademark law is designed to protect any party's ability to truthfully describe its services in the same or similar manner. [*Id.* ¶ 27.] The court also awarded the defendants in that lawsuit, including GoJump, attorneys' fees and non-taxable costs due to the "exceptional" nature of SSI's "objectively unreasonable litigation position." [*Id.* ¶ 29.] On appeal, the Ninth Circuit Court of Appeals ("Ninth Circuit") affirmed the district court's dismissal of the 2023 lawsuit. [*Id.* ¶ 28.]

### B.    Acquisition of Domain Name

Sometime near or during the 2023 litigation, SSI and Mr. Hinshaw caused and/or conspired to cause Hinshaw IT to acquire the domain name "https://gojump.com/" from an amusement park in Dallas, Texas that had ceased operations in or around 2021. [Compl. ¶ 30.] Prior to this acquisition, the domain name had been used exclusively to advertise and sell amusement park goods and services in Dallas, Texas under the mark "Zero Gravity Thrill Amusement Park." [*Id.* ¶ 31.] Following acquisition, SSI and Mr. Hinshaw "caused, conspired with, and/or aided and abetted Hinshaw IT to start using that domain name and the marks, 'GoJump,' 'GoJump.com,' and 'GOJUMP.COM,' to advertise and sell competing skydiving services offered by, *inter alia*, SSI and other competitors of GoJump's [sic] without GoJump's knowledge or authorization." [*Id.* ¶ 32.]

Now, Defendants are "repeatedly and conspicuously" using the gojump.com domain to advertise and sell skydiving-related goods and services using the "GOJUMP" mark. [Compl. ¶ 34.]

### C.    Defendants' Alleged Misrepresentations to the United States Patent and Trademark Office ("USPTO")

Less than one month after SSI was directed to pay attorneys' fees and costs in the 2023 litigation, Hinshaw IT employed the same law firm and counsel from the prior action to file a combined trademark and service mark application ('831) with the USPTO to register the mark "GOJUMP.COM" for goods and services related to, as pertinent here, skydiving. [Exh. B, ECF No. 1-4 at PageID.111–12; Compl. ¶ 35.] This application provided GoJump with "important insight into the scheme Defendants had concocted to exact revenge against [it] including, for example, a flyer from the prior user of https://gojump.com/, Zero Gravity Thrill Amusement Park, showing the very different way that company used its website." [Compl. ¶ 36 (hyperlink omitted).] Despite being involved in the 2023 litigation in which GoJump was a party, legal counsel who filed the application on behalf of Hinshaw IT falsely declared that "no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive." [*Id.* ¶ 37; Exh. B at PageID.160.]

On March 19, 2025, Hinshaw IT again employed the same law firm and counsel to file another service mark application ('579) with the USPTO in attempts to register the mark "GOJUMP.COM." [Compl. ¶ 40; Exh. C, ECF No. 1-5.] This second application contained the same services recitation as the first, apart from a few revisions and additions. [Compl. ¶ 40; *compare* Exh. C *with* Exh. B.] It also contained the same false declaration from counsel. [Compl. ¶¶ 42–43; Exh. C at PageID.194.]

5

Just when GoJump was near the period during which it could have filed a Declaration of Incontestability giving it "conclusive presumptions" in the ownership, validity, and legal protectability of the "GOJUMP" mark, Hinshaw IT--through the same legal counsel--filed a Petition for Cancellation of GoJump's registration. [Compl. ¶ 46; Exh. D, ECF No. 1-6.] Alleging priority and likelihood of confusion, this petition sought to cancel the protection extended to the following goods/services offered by GoJump: "[r]ecreational services in the nature of professional tandem sky diving; tandem sky diving from planes and helicopters; [and] professional sky diving instruction services." [Exh. D at PageID.216.]

### D.  Current Litigation

GoJump did not discover Defendants' use of the domain name and their "ham-fisted plot to exact revenge for SSI's repeated litigation failures before this Court and the Ninth Circuit" until in or around March 2025. [Compl. ¶¶ 33, 39.] After the discovery, on April 4, 2025, GoJump filed a Complaint for Injunctive and Declaratory Relief and Damages ("Complaint"), raising the following claims for relief: (1) federal trademark infringement against Defendants under 15 U.S.C. § 1114; (2) federal trademark counterfeiting against Defendants under 15 U.S.C. § 1114; (3) federal unfair competition against Defendants under 15 U.S.C. § 1125(a); (4) violation of the Anticybersquatting Consumer Protection Act against Hinshaw IT under 15 U.S.C. § 1125(d); (5) unfair competition and deceptive trade practices against Defendants under Hawaii Revised Statutes ("HRS") § 481A-1 *et seq.*; (6) trademark infringement and unfair competition against Defendants under Hawai'i common law; (7) cybersquatting and cyberpiracy against Hinshaw IT under HRS § 481B-21 *et seq.*; and (8) "Declaratory Relief Rectifying the Register, Refusing Registration of Hinshaw IT's '831 and '579 Applications for 'GOJUMP.COM,' and Declaring GoJump's Prior Rights to the GOJUMP

Mark Such That Its '458 Registration Can Proceed to Incontestability" against Hinshaw IT under

15 U.S.C. § 1119. [*Id.* ¶¶ 49–107.]

On the same date, April 4, 2025, GoJump moved for a preliminary injunction

against Defendants ("PI Motion"), requesting that the Court enjoin "Defendants and all persons

acting in concert or participation with Defendants" from doing the following:

> A.     Using https://gojump.com/ (the "gojump.com Domain")
> and any other domain name that is confusingly similar to
> GoJump's mark, "GOJUMP" (the "GOJUMP Mark"), in
> connection with the promotion, marketing, advertising, or offering
> for sale or sale of recreational skydiving services and/or skydiving
> instruction services;

> B.     Using "skydiving," "sky diving," "parachute,"
> "parachuting," or similar terms that describe skydiving services in
> meta tags, "pay-per-click" and keyword advertising, including
> Google AdWords, for or in connection with the gojump.com
> Domain;

> C.     Displaying, promoting, or otherwise using the GOJUMP
> Mark, gojump.com Domain, or any other confusingly similar
> marks, including but not limited to the word mark,
> "GOJUMP.COM", and the stylized mark, "GOJUMP.COM" which
> incorporates a skydiver into its design, as trademarks, trade names,
> service marks, logos, or identifiers in or on any advertising,
> marketing, or promotional materials; websites—including
> "gojump.com" and all other websites, whether desktop or mobile;
> social media handles or posts—on any platform, whether desktop
> or mobile; product packaging; signage; banners; invoices;
> pamphlets; leaflets; flyers; apparel; merchandise; or any other
> commercial material or medium, in connection with the promotion,
> marketing, advertising, or offering for sale or sale of recreational
> skydiving services or skydiving instruction services;

> D.     Engaging in any activity that infringes upon GoJump's
> GOJUMP Mark in violation of 15 U.S.C. §§ 1114 and 1125(a); and

> E.     Assisting, aiding, abetting, or encouraging any third parties
> to engage in any of the prohibited activities in subparagraphs (A)
> through (D) above.

[PI Mot., ECF No. 2 at PageID.268–70 (hyperlink omitted).]

## II.        PROCEDURAL HISTORY

Almost immediately after GoJump filed its Complaint and PI Motion, on April 5, 2025, this Court issued an Entering Order, directing GoJump to file proofs of service or waivers of same as to each named defendant, after which the Court would set a status conference to discuss a hearing date and a briefing schedule. [ECF No. 13.] GoJump observed the Court's directive, [*see* ECF Nos. 24–26,] and a status conference was held on May 2, 2025 [ECF No. 32]. At the status conference, the parties indicated that they were receptive to resolving the PI Motion without a hearing; hence, the Court referred the parties to the assigned magistrate judge for continued discussions. [*See* ECF No. 32.] The parties engaged in a settlement conference and later informed the Court that they had retained a mediator to assist in their efforts to resolve the issues in this case. [ECF Nos. 38, 43.] While the parties were in mediation, however, no progress was made; and GoJump consequently requested that the PI Motion be set for hearing. [ECF Nos. 49–50.] Subsequently, on August 22, 2025, Defendants filed a Motion to Dismiss GoJump's Complaint ("Motion to Dismiss") under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). [ECF No. 51.]

By Entering Order issued September 5, 2025, the Court set a briefing schedule on both the PI Motion and the Motion to Dismiss and directed the parties to file a joint statement indicating, *inter alia*, whether an evidentiary hearing on the PI Motion was necessary. [ECF No. 54.] On October 24, 2025, the parties notified the Court that an evidentiary proceeding was not necessary. [ECF No. 57.] Hence, a non-evidentiary hearing on both the PI Motion and the Motion to Dismiss was held on November 25, 2025. [ECF No. 63.] At the conclusion of such hearing, the Court took both matters under advisement. This written Order now follows.

III.        STANDARD OF REVIEW

A.        Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not" suffice, nor does a complaint that presents "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Indeed, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Yet, it "does not require 'detailed factual allegations.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Deciding whether a complaint states a plausible claim for relief is context-specific and "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

B.        Motion for Preliminary Injunction

In seeking injunctive relief, a plaintiff must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). The Ninth Circuit has adopted the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that a plaintiff has raised serious questions going to the merits and a hardship balance tips sharply toward it, assuming the other two elements of the *Winter* test have been

satisfied. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (citation omitted).

## IV.        DISCUSSION

### A.    Defendants' Motion to Dismiss

Defendants seek dismissal of this action on the following grounds: (1) GoJump failed to plead priority in the "GOJUMP" mark, (2) the Complaint falsely suggests that GoJump has a trademark registration for the single word "GOJUMP," and (3) there are insufficient facts establishing Mr. Hinshaw's personal liability. [ECF No. 51-1 at PageID.406–21.] The first two grounds are analyzed in a single section discussing priority in use, while the third ground is considered in a separate section thereafter.

#### 1.    Priority in Use[4]

Defendants assert that the Complaint is "entirely devoid" of any allegations showing that GoJump possesses superior trademark rights in the "GOJUMP" mark. [ECF No. 51-1 at PageID.408.] To claim trademark infringement, a plaintiff must first establish that it owns a valid and protectable trademark. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202–03 (9th Cir. 2012) (citing *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)). A "fundamental tenet of trademark law is that ownership . . . is governed by priority of use." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (citing *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Rearden*, 683 F.3d at 1203 (quoting *Sengoku*

---

[4] For a more in-depth analysis of priority in use, see *infra* Section IV.B.1.

*Works*, 96 F.3d at 1219). "When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark." *Sengoku Works*, 96 F.3d at 1219 (citing Lanham Act § 7(b), 15 U.S.C. § 1057(b); Lanham Act § 33(a), 15 U.S.C. § 1115(a)).

Here, the Complaint alleges that GoJump has a federal service mark registration "in International Class 41 for 'GoJump' (stylized) for '[r]ecreational services in the nature of professional tandem sky diving; tandem sky diving from planes and helicopters; [and] professional sky diving instruction services.'" [Compl. ¶ 19.] The '458 registration describes the mark as consisting of, *inter alia*, a "circle positioned above the words 'GOJUMP'" and states that the first use of the mark in commerce was June 1, 2015. [Exh. A.] Since their inception in 2015, the GoJump companies have been using the word "GOJUMP" to sell and advertise skydiving services and promotional merchandise. [Compl. ¶¶ 18, 20–23.] As such, the GoJump companies have developed exclusive and valuable goodwill in the word "GOJUMP" and have earned widespread recognition among consumers. [*Id.* ¶¶ 21–22, 25.] On these allegations, GoJump has sufficiently pled that it established rights in the "GOJUMP" mark based on its federal registration alone.

Defendants dispute the allegations in the Complaint, claiming that they falsely suggest GoJump has a federal trademark registration for the single word "GOJUMP." The Court is unpersuaded. At the pleading stage, the Court is bound to accept a plaintiff's allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) (citations omitted). Additionally, the Complaint is not confusing or misleading as to GoJump's trademark rights, as it not only includes an illustration of the mark GoJump federally registered, but it also attaches the registration certificate that explicitly describes the registered mark. Furthermore, the presumption

11

that a registered mark has validity is not necessarily limited to the logo mark itself but could also encompass the words in the logo mark protected by the registration. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005) (citations omitted). GoJump has sufficiently pled factual allegations establishing that the word "GOJUMP" is the most salient feature of the logo mark, and thus, "any infringement of the word mark registration would also be an infringement of the logo mark." *See id.* at 603–04 (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 331 n.3 (9th Cir. 1983), *rev'd on other grounds*, 469 U.S. 189 (1985)).

Defendants also assert that the "https://gojump.com/" domain name was in existence prior to the GoJump companies' use of the word "GOJUMP" in commerce. Even if true, the domain name was not used in connection with skydiving services anywhere, let alone in Hawai'i, and certainly not used by Defendants until, at the earliest, 2023. Instead, as the Complaint alleges, the domain name Defendants recently acquired--at or around the time GoJump had begun utilizing the same drop zone--was previously used by an amusement park in Dallas, Texas to exclusively advertise and sell amusement park goods and services under the mark "Zero Gravity Thrill Amusement Park." [Compl. ¶¶ 26, 31.] The Complaint also alleges that the GoJump companies have been operating under the name "GOJUMP" since 2015, that they have been selling and advertising skydiving services, that their name is "inherently distinctive" for their products and services, and that they have "developed exclusive and valuable goodwill and strong federal, statutory, and common law rights in the 'GoJump' mark . . . before they had ever crossed paths with Defendants." [*Id.* ¶ 25.] These allegations demonstrate GoJump has an exclusive right to use the "GOJUMP" mark on "[r]ecreational services in the nature of professional tandem sky diving; tandem sky diving from planes and helicopters; [and] professional sky diving instruction services." [Exh. A.]

12

Insistent, Defendants point to general principles articulated by the Ninth Circuit and maintain they are senior users of the single word "GOJUMP" because the new advertised services on the domain are within the natural zone of expansion of the domain's historical use.[5] [ECF No. 51-1 at PageID.409, 412.] The concept of the natural zone of expansion is implicated where a "senior user" of a mark expands into new markets or services that are logically connected to its existing business. *See, e.g.*, *Brookfield Commc'ns*, 174 F.3d at 1051 ("When a senior user of a mark on product line A expands later into product line B and finds an intervening user, priority in product line B is determined by whether the expansion is 'natural' in that customers would have been confused as to source or affiliation at the time of the intervening user's appearance." (citation omitted)); *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (use of a mark must be "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark" (citation omitted)). In other words, the inquiry is whether, based on criteria such as geographic area and market penetration, the new market or service is a natural expansion of the current business. *See Brookfield Commc'ns*, 174 F.3d at 1051; *beef & brew, inc. v. Beef & Brew, Inc.*, 389 F. Supp. 179, 185–86 (D. Or. 1974); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 984–86 (C.D. Cal. 2002) (citations omitted). After all, priority of use in trademark law is established by commercial usage. *See Sengoku Works*, 96 F.3d at 1219 ("It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not

---

[5] The Court notes that burden shifting on the threshold issue of validity occurs during summary judgment and not at the pleading stage where a plaintiff's allegations are accepted as true. *See KP Permanent Make-Up*, 408 F.3d at 604 (evaluating summary judgment and noting that "the plaintiff in an infringement action with a registered trademark is given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise" (quoting *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002))).

enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." (citation omitted)). "The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically occurs when a mark is used in conjunction with the actual sale of goods or services." *Rearden*, 683 F.3d at 1204 (quoting *Brookfield Commc'ns*, 174 F.3d at 1051). "The purpose of a trademark is to help consumers identify the source, but a mark cannot serve a source-identifying function . . . until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Id.* (quoting *Brookfield Commc'ns*, 174 F.3d at 1051).

As stated previously, the domain name at issue--prior to Defendants acquiring it--was not used in the Hawaiʻi market or in conjunction with the actual sale of skydiving services. Hence, the proper inquiry is whether such services may be considered a logical extension of the amusement park in Texas. According to the Complaint, the domain's historical use has been tethered solely to amusement park goods and services in Texas, which the allegations suggest do not align with the addition of skydiving services. Nor was the domain name used with a view toward some expansion into Hawaiʻi. In fact, the Complaint suggests the opposite is true by means of the "GOJUMP" mark not having penetrated the Hawaiʻi market until the GoJump companies were established and their recognition widespread. Even the prior user of the domain used the website in a "very different way," revealing "important insight into the scheme Defendants had concocted to exact revenge against GoJump." [Compl. ¶ 36.] The allegations--which this Court must accept as true--in their entirety indicate that skydiving services in Hawaiʻi do not fall within the zone of natural expansion for an amusement park

14

business that had primarily operated in Texas. Consequently, at this juncture of the litigation, Defendants' argument that they are "senior users" of the "GOJUMP" mark fails.

On the whole, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," only a short and plain statement "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). The Complaint here satisfies those plausibility requirements, particularly as they relate to priority in use.[6]

### 2.    Personal Liability

Defendants assert Mr. Hinshaw should be dismissed from this action because the Complaint fails to articulate specific facts showing he personally authorized, directed, or participated in the allegedly infringing conduct. [ECF No. 51-1 at PageID.418.]

"A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (citation and internal quotation marks omitted). In other words, to be personally liable for a corporation's trademark infringement, a corporate officer must have knowingly and substantially participated in the act that caused the trademark infringement. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 824 (9th Cir. 1996) (citation omitted); *see also Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1106 (S.D. Cal. 2018) ("Corporate officers are 'personally liable for [a] corporation's . . . trademark infringements when they are a "moving, active conscious force" behind the corporation's infringement.'"

---

[6] Needless to say, the Court rejects Defendants' challenge to Counts I through III, [*see* ECF No. 51-1 at PageID.416–17 & n.9,] for the reasons articulated in this Order.

(ellipsis in original) (quoting *Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004))).

Here, the Complaint alleges, *inter alia*, that Mr. Hinshaw owns and controls SSI and Hinshaw IT and that, to "exact revenge" against GoJump because he lost the 2023 litigation, Mr. Hinshaw participated in a conspiracy to acquire the subject domain and then begin using the domain and "GOJUMP" marks to advertise and sell competing skydiving services. [Compl. ¶¶ 2–3, 12, 14, 26–34, 36.] The Complaint adds that Mr. Hinshaw personally directed and approved the "vindictive and fraudulent scheme" that consisted of the other defendants' improper use of the word "GOJUMP" to provide skydiving services, raising the likelihood of confusion, deception, and mistake. [*See, e.g.*, *id.* ¶¶ 47, 50, 52, 55.] Directing, approving, and participating in a "carefully constructed farce," Mr. Hinshaw and his codefendants also leveraged fraudulent misrepresentations to the USPTO to prevent GoJump from securing incontestable status for its '458 registration by filing a Petition for Cancellation that concedes the likelihood of confusion alleged in the Complaint. [*Id.* ¶¶ 45–48.] This Petition provides that "[Hinshaw IT] and [SSI] are commonly owned by [Mr. Hinshaw]." [*Id.* ¶ 46f.] On these allegations, the Court finds that the Complaint contains sufficient factual content showing that Mr. Hinshaw is a "moving, active conscious force" behind the infringement.

The level of factual detail sought by Defendants is not required by federal pleading standards.[7] To reiterate, "a complaint attacked by a Rule 12(b)(6) motion to dismiss

---

[7] In support of their argument that the Complaint lacks factual allegations of personal involvement, Defendants cite to the following nonbinding decisions: (1) *Apple Hill Growers v. El Dorado Orchards*, No. 2:17-cv-02085-TLN-CKD, 2019 WL 5827365 (E.D. Cal. Nov. 7, 2019); (2) *Solorio v. CareCo, LLC*, Case No. 8:24-cv-00663-JVS-JDE, 2024 WL 3915234 (C.D. Cal. July 2, 2024); and (3) *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153 (11th Cir. 2022). [ECF No. 51-1 at PageID.419–20.] These decisions are unpersuasive. Unlike here, the plaintiffs in those cases failed to plead facts tying the defendants to the infringing conduct and showing the

does not need detailed factual allegations," only a short and plain statement "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Court concludes that the Complaint provides sufficient factual allegations showing that Mr. Hinshaw is personally liable for trademark infringement.

### B.    GoJump's Motion for Preliminary Injunction

GoJump moves for a preliminary injunction against Defendants to prevent consumer confusion and preserve fair competition in the marketplace. [PI Mot., ECF No. 2.]

A plaintiff seeking a preliminary injunction in a trademark case must demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).

The primary focus of the parties' arguments is on the factor of probable success on the merits. Therefore, majority of the Court's analysis is on that single factor.

### 1.    *Likelihood of Success on the Merits*

To sustain a claim for trademark infringement (or unfair competition), a plaintiff must establish that the defendant "is using a mark confusingly similar to a valid, protectable trademark of" the plaintiff's. *Brookfield Commc'ns*, 174 F.3d at 1046 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)). The likelihood of confusion is the core element of trademark infringement. *Id.* at 1053 (citing *Off. Airline Guides, Inc. v. Goss*, 6 F.3d

---

defendants were a "moving, active conscious force" behind such conduct. As demonstrated by the allegations in the Complaint which are briefly summarized and/or referenced in this Order, GoJump has stated a plausible claim for relief against Mr. Hinshaw in his individual capacity.

1385, 1391 (9th Cir. 1993)). Nonetheless, since the parties do not dispute that Defendants' use of the "https://gojump.com/" domain name creates a likelihood of confusion, the Court limits its analysis to whether GoJump has a valid, protectable mark in the word "GOJUMP."

"The threshold issue in any action for trademark infringement is whether the words used by a manufacturer in connection with his product are entitled to protection." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985)). GoJump may establish it has a protectable interest in the word "GOJUMP" in one of three ways: "(1) it has a federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable." *Id.* at 970.

Here, GoJump submitted a copy of its federal service mark registration, which encompasses "[r]ecreational services in the nature of professional tandem sky diving; tandem sky diving from planes and helicopters; [and] professional sky diving instruction services." [Exh. A at PageID.108.] The registration describes the registered mark as "consist[ing] of a circle having a top half representing the sky and a bottom half representing the horizon where the ground meets the sky and a white wing shape extending from the bottom half of the circle towards the horizon all located within the circle, the circle positioned above the words 'GOJUMP'." [*Id.* See below for an image of the registered mark.]



Considering GoJump's registration, an important inquiry is where the registered mark falls on the spectrum of distinctiveness.

Trademarks are generally divided into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). The latter three categories "are considered 'inherently distinctive' and are automatically entitled to federal trademark protection because 'their intrinsic nature serves to identify a particular source of a product.'" *Id.* (quoting *Two Pesos*, 505 U.S. at 768). As to the second category, a mark that is merely descriptive can become a registrable mark "if it has acquired distinctiveness 'as used on or in connection with the applicant's goods in commerce.'" *Id.* (quoting 15 U.S.C. § 1052(f)). "This acquired distinctiveness is referred to as 'secondary meaning.'" *Id.* (quoting *Two Pesos*, 505 U.S. at 769).

Since their inception in 2015, the GoJump companies have used "GoJump," "gojump," and various other versions of the word--both online and at GoJump retail locations--to sell and advertise skydiving services.[8] [Michael Vetter ("Vetter") Decl., ECF No. 1-9 ¶¶ 6, 13.] Moreover, GoJump contends it secured its registration without having to show that its mark acquired secondary meaning. [ECF No. 1-2 at PageID.93 (citing Vetter Decl. ¶ 20).] But even if it did, GoJump has--at the very least--demonstrated that its mark has become distinctive in its goods and services in commerce. Between its registration and its continuous and exclusive uses of the word "GOJUMP" in connection with skydiving services, "when people in the markets [GoJump serves] in the United States and beyond hear the name, 'GoJump,' they think of [GoJump's] brand and [its] locations." [Vetter Decl. ¶ 17.] GoJump has "continually received outstanding customer reviews and industry accolades and [has] been featured in numerous

_____

[8] The word "GOJUMP" has actually been used--by the founder and owner of the GoJump companies--in connection with skydiving services since April 2006. [Michael Vetter Decl., ECF No. 1-9 ¶ 5.]

multi-media publications as a leading provider of recreational skydiving experiences in the United States," and its "brand is synonymous with safe, quality skydiving experiences in premium locations." [*Id.* ¶¶ 18–19.] Furthermore, GoJump has received "thousands of unsolicited positive user ratings and reviews which highlight the positive reputation [GoJump has] worked tirelessly to earn with [its] customers." [*Id.* ¶ 20.]

In this regard, the GoJump companies have demonstrated that the most salient feature of their logo mark is the word "GOJUMP." *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005). Hence, the registration they secured protects both the logo mark and the word in the logo mark, namely, "GOJUMP." *See id.* ("[A]ny infringement of the word mark registration would also be an infringement of the logo mark." (citation omitted)).

GoJump's registration on the Principal Register discharges its "original common law burden of proving validity in an infringement action." *Applied Info. Scis.*, 511 F.3d at 970 (quoting *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005)). As such, by demonstrating it holds a federal registration, GoJump has made a prima facie showing that it owns a valid and protectable mark and has the exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (citing Lanham Act § 7(b), 15 U.S.C. § 1057(b); Lanham Act § 33(a), 15 U.S.C. § 1115(a)). Defendants can overcome this presumption, however, by showing they used the mark in commerce first. *Brookfield Commc'ns*, 174 F.3d at 1047 (citing *Sengoku Works*, 96 F.3d at 1219).

At the outset, it is undisputed that Defendants have never used the domain name at issue prior to 2023 because that was the year when they acquired the domain from a business

ceasing operations in Texas. Nor has the domain name been used, prior to 2023, in the same industry and market, whether in skydiving or in Hawaiʻi. Rather, Defendants argue that the "https://gojump.com/" domain they acquired three years ago has been used in commerce since at least 1998, prior to the establishment of the GoJump companies. Therefore, Defendants continue, they are the "senior users" of the "GOJUMP" mark.

To establish priority of use, "it is not enough to have invented the mark first." *Sengoku Works*, 96 F.3d at 1219 (citation omitted). "[T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.* (citation omitted).

The term "use in commerce" is defined, under the Lanham Act, as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. The Lanham Act additionally provides the following:

> a mark shall be deemed to be in use in commerce--
>
> > (1) on goods when--
> >
> > > (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
> > >
> > > (B) the goods are sold or transported in commerce, and
> >
> > (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

*Id.* For both goods and services, the requirement that a mark be used in commerce "includes (1) an element of actual use, and (2) an element of display." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001).

21

A user is not deemed a senior user of a trademark merely because the mark was used earlier in time, particularly if that earlier use was not in connection with the same or closely related goods or services. As stated previously, "[t]he Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically occurs when a mark is used in conjunction with the actual sale of goods or services." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012) (quoting *Brookfield Commc'ns*, 174 F.3d at 1051). In other words, the mark must have been used within the relevant market or industry "in a manner that creates an association among consumers between the mark and the mark's owner." *Brookfield Commc'ns*, 174 F.3d at 1051.

Here, the only evidence presented by Defendants in opposition to GoJump's request for injunctive relief is the declaration of Mr. Hinshaw reaffirming that the domain was, before 2023, used to offer gravity-driven amusement park rides in Texas having no connection to skydiving or Hawai'i. [*See* Frank Hinshaw ("Hinshaw") Decl., ECF No. 56-1 ¶¶ 3–4.] This earlier use of the domain name does not constitute sufficient use "in conjunction with" the actual sale of skydiving goods or services in Hawai'i. *See Brookfield Commc'ns*, 174 F.3d at 1051. Indeed, Defendants have presented no evidence of priority to rebut the presumption of validity afforded to GoJump's registration.

Instead, Defendants contend that, since acquisition of the domain, they have adopted and expanded on "the same, similar, and related gravity-driven entertainment services" offered by the prior owner "for several years." [Hinshaw Decl., ECF No. 56-1 ¶ 4.] A senior user "has the right to enjoin 'junior' users from using confusingly similar marks . . . within the senior user's natural zone of expansion." *Brookfield Commc'ns*, 174 F.3d at 1047 (citations omitted). The "natural zone of expansion" is the "territory that would probably be reached by the prior

user in the natural expansion of his trade." *beef & brew, inc. v. Beef & Brew, Inc.*, 389 F. Supp.

179, 185 (D. Or. 1974) (quoting *Hanover Star Milling v. Metcalf*, 240 U.S. 403, 420 (1916),

*superseded by statute as stated in Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189

(1985)). This doctrine, "however, is generally defined narrowly." *Glow Indus., Inc. v. Lopez*, 252

F. Supp. 2d 962, 984 (C.D. Cal. 2002) (citations omitted). In determining whether an area falls

within a user's zone of natural expansion, courts have looked to relevant criteria such as

geographic area, market penetration, and whether expansion is or would be "a logical, gradual,

step of the same length as those previously made." *See, e.g., id.* at 984–86 (citations omitted);

*Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1121 (S.D. Cal. 2014) (stating that only if

the plaintiff can establish market penetration in a specific geographic area must the court then

assess whether the plaintiff may preclude the defendant from utilizing the mark within the

plaintiff's "natural zone of expansion" (citations omitted)); *beef & brew*, 389 F. Supp. at 186

(concluding that the plaintiff's name had no secondary meaning in Portland, the closest zone

alleged to be a natural expansion of the Seattle chain).

       Here, Defendants proffer no evidence regarding market penetration or sales of

skydiving services in relation to use of the domain. Specifically, they adduce no evidence

detailing, *inter alia*, the volume or level of sales, growth trends, or the geographic areas covered

by the domain. Awarding trademark rights based on a natural zone of expansion presupposes

"that the trademark user has already penetrated the market in at least some geographic areas and

established a presence there." *Glow Indus.*, 252 F. Supp. 2d at 985. "Indeed, it is only after

existing zones of market penetration are determined that natural zones of expansion can be

identified." *Id.* (citing *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1028 (11th Cir.

1989)). Defendants provide little to no information proving they should be awarded trademark

rights as the senior users of the "GOJUMP" mark in Hawai'i. Nor do Defendants offer any evidence that the prior owner made efforts toward some expansion into Hawai'i. Put simply, on the present record, this Court cannot conclude that Defendants' use of the domain to sell and advertise skydiving services are within the natural zone of expansion of the prior owner's business.

Altogether, the generalized nature of Defendants' evidence does not establish prior use in commerce sufficient to rebut the presumption that GoJump, as the registrant, owns the "GOJUMP" mark. As such, the Court finds as a matter of law that Defendants were not the first to use the word "GOJUMP," that the GoJump companies have established priority in use, that their claim for trademark infringement is likely to succeed, and that they are entitled to injunctive relief.[9]

### 2.    *Irreparable Harm and Public Interest*

The legal landscape for the requirement of irreparable harm in the preliminary injunction context of a trademark infringement case appears to have shifted over the last several years. Prior to 2013, the Ninth Circuit ruled that irreparable harm "may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim." *Brookfield Commc'ns*, 174 F.3d at 1066 (citing *Metro Publ'g, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993)). Then, in 2013, the Ninth Circuit joined other circuits in holding that a plaintiff in a trademark infringement case must demonstrate irreparable harm to obtain a preliminary injunction. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citations omitted). More recently in 2020, however, Congress amended the injunctive relief statute applicable to trademarks to add a rebuttable presumption of irreparable

---

[9] Given this conclusion, the Court need not determine the likelihood of success of the additional claims raised in the Complaint.

harm for plaintiffs seeking injunctions where they have demonstrated a likelihood of success on the merits. *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order."). Since this amendment, district courts within the Ninth Circuit have decided the issue of irreparable harm in trademark infringement actions variedly. *Compare, e.g.*, *Suzie's Brewery Co. v. Anheuser-Busch Cos.*, 519 F. Supp. 3d 839, 854–55 (D. Or. 2021) (holding that the plaintiff was entitled to the rebuttable presumption in 15 U.S.C. § 1116 because it had demonstrated a likelihood of success on the merits), *with Cal. Power Athletes, Inc. v. Cali Power Inc.*, Case No. 8:25-cv-02224-DOC-KES, 2025 WL 3691843, at *4 (C.D. Cal. Dec. 2, 2025) (slip copy) (ruling in accordance with *Herb Reed* that irreparable harm will not be presumed). Be that as it may, it appears that the more recent controlling authority on this issue is 15 U.S.C. § 1116.

At the hearing on the Motions, Defendants agreed that Section 1116(a) is the applicable standard but disagreed that GoJump had demonstrated a likelihood of success on the merits. This Court has already ruled that GoJump has shown Defendants are "using a mark confusingly similar to a valid, protectable trademark of" GoJump's. *See supra* Section IV.B.1. Therefore, GoJump is entitled to the rebuttable presumption set forth in Section 1116(a), and Defendants have not rebutted this presumption.

But even if irreparable harm may not be presumed and GoJump is required, as the Ninth Circuit held in *Herb Reed*, to establish irreparable harm, it has done so in this case. "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed*, 736 F.3d at 1250 (holding that evidence of loss of customer

goodwill supports finding of irreparable harm (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001))). Here, GoJump has presented, *inter alia*, a declaration from its founder stating that there have been documented (and undocumented) instances of actual confusion resulting from SSI's use of the domain name to sell and advertise skydiving services. [Vetter Suppl. Decl., ECF No. 58-1 ¶¶ 2–4.] This "theft of . . . identity" by Defendants "has and will continue to confuse the public into thinking those brands are affiliated with [GoJump's], and [GoJump's] brand is affiliated with theirs." [Vetter Decl. ¶ 23.] After all, the name "GoJump" has been used continuously and exclusively by the GoJump companies for years, and it has become synonymous with the GoJump companies' brand and locations. [*Id.* ¶¶ 17–18.] Confusion aside, Defendants' use of the domain name and their "free ride" on GoJump's longstanding reputation within the skydiving market has diverted GoJump's customers in Hawai'i to SSI. [*Id.* ¶¶ 17–23.] Without an injunction, GoJump stands to lose its customers and accompanying goodwill and revenue that it has worked years to build and into which it has invested substantial resources. [*See id.*]

Altogether, preliminary injunctive relief is appropriate to prevent irreparable harm to GoJump's interests in the "GOJUMP" mark and to also promote the public interest in protecting trademarks generally and preventing consumer confusion. *See Brookfield Commc'ns*, 174 F.3d at 1066.

### 3.    Balance of Hardships

As to balance of hardships, if no injunction issues, GoJump will continue to experience customer confusion and damage to its goodwill. To reiterate, GoJump, which has a federal service mark registration, has been operating its business under the name "GOJUMP" for approximately ten years. It has gained widespread recognition in the market of skydiving, and consumers have come to associate "GOJUMP" products and services with the GoJump

26

companies. By contrast, Defendants only recently acquired the domain name (in 2023), and the allegations in this case suggest they did so to intentionally usurp GoJump's mark and to exact revenge against it. Needless to say, the hardship to GoJump in denying an injunction would be much greater than the hardship to Defendants in granting one.

### 4. Conclusion as to GoJump's Motion for Preliminary Injunction

GoJump has demonstrated a combination of probable success on the merits and the possibility of irreparable harm. *See Brookfield Commc'ns*, 174 F.3d at 1047 (citing *Sardi's Rest.*, 755 F.2d at 723). It has also demonstrated that an injunction is in the public interest and that the balance of equities tips in its favor. Therefore, GoJump is entitled to a preliminary injunction in this case.[10]

### 5. Bond

Under the relevant provision of Fed. R. Civ. P. 65, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The district court has discretion to determine the amount of security required, if any. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citing *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).

---

[10] The Court disagrees with Defendants' position that GoJump should not be awarded preliminary relief because its allegations are conclusory. The Complaint, PI Motion, and their attachments, including Hinshaw IT's own applications to the USPTO, contain sufficient factual matter demonstrating intentional violations by Defendants of trademark law. The Court also disagrees that preliminary relief should not be awarded merely because Defendants would suffer harm. Whether or not a preliminary injunction should issue does not depend on potential harm to a defendant. Rather, it requires a showing by the plaintiff of, *inter alia*, probable success on the merits and irreparable harm. Issues involving potential harm to the defendant are more appropriate for the determination of bond.

Defendants contend a "substantial investment was made" in the acquisition of the domain and the development of the webpage, adding that a preliminary injunction would result in the complete removal of their webpage and the loss of the domain's "active customer base" and "listing partnerships" currently advertising on the domain. [ECF No. 56 at PageID.479–80; Hinshaw Decl. ¶¶ 6–8.] Beyond these generalized statements, Defendants do not provide any detailed information as to the number of customers "active" on the domain; the costs of investment in the domain; the costs of webpage development; and the list of partnerships that would vanish upon removal of the webpage. Equally important, Defendants do not propose a bond amount that they believe would safeguard their interests should a court later determine they have been wrongfully enjoined. Absent any such showing, this Court must determine the amount of security proper in this case, and based on the record before it, the Court FINDS that bond in the nominal amount of $1,000 is reasonable. *See Barahona-Gomez*, 167 F.3d at 1237 (concluding that the district court did not err in requiring the plaintiffs to post a nominal bond of $1,000 where the defendants did not tender any evidence on the issue).

**V.        CONCLUSION**

For the reasons stated, Defendants' Motion to Dismiss, ECF No. 51, is DENIED; and GoJump's Motion for Preliminary Injunction, ECF No. 2, is GRANTED. Pursuant to the granting of GoJump's Motion for Preliminary Injunction, this Court ORDERS that, unless and until a court directs otherwise, Defendants shall be enjoined and restrained from doing the following:

(1) Using https://gojump.com/ (the "gojump.com Domain") and any other domain name that is confusingly similar to GoJump's mark, "GOJUMP" (the "GOJUMP Mark"), in

connection with the promotion, marketing, advertising, or offering for sale or sale of recreational skydiving services and/or skydiving instruction services;

(2) Using "skydiving," "sky diving," "parachute," "parachuting," or similar terms that describe skydiving services in meta tags, "pay-per-click" and keyword advertising, including Google AdWords, for or in connection with the gojump.com Domain;

(3) Displaying, promoting, or otherwise using the GOJUMP Mark, gojump.com Domain, or any other confusingly similar marks, including but not limited to the word mark, "GOJUMP.COM," and the stylized mark, "GOJUMP.COM" which incorporates a skydiver into its design, as trademarks, trade names, service marks, logos, or identifiers in or on any advertising, marketing, or promotional materials; websites—including "gojump.com" and all other websites, whether desktop or mobile; social media handles or posts—on any platform, whether desktop or mobile; product packaging; signage; banners; invoices; pamphlets; leaflets; flyers; apparel; merchandise; or any other commercial material or medium, in connection with the promotion, marketing, advertising, or offering for sale or sale of recreational skydiving services or skydiving instruction services; and

(4) Assisting, aiding, or abetting any third parties to engage in any of the prohibited activities in subparagraphs (1) through (3) above.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, December 31, 2025.



Shanlyn Park
United States District Judge